E-FILED
Wednesday, 30 June, 2021  05:30:05 PM
Clerk, U.S. District Court, ILCD

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

_____ **Lawrence Correctional** _____ Center

| Offender Information: | | | |
|---|---|---|---|
| Long | Dwight | | ID#: S15203 |
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/24/14 9:15am | I/M performed 15 scapular squeezes c̄ Blue TB, shoulder exercises in prone on exercise mat. ×15 reps Shoulder flexion, extension é abduction. I/M used Blue TB for IR/ER of shoulder. I/M used 2# weights on each wrist to perform ×15 reps of shoulder flexion et extension. PT tx ended c̄ IFC + HP on each shoulder. 80×150 continuous ×10 min. (L) shoulder on 11 (R) shoulder on 12 skin checks WNLs | **P: Plan:** cont. c̄ PT 3x/week ↑ strength et ROM ↓ pain |
| | | **Patient education and instruction:** disease proce... fall prevention    exercise    safe mobility |
| | | use adaptive equipment   medication safety |
| | | **Specify:** Encouraged I/M to cont. HEP in cell and stretching. |
| | **A: Treatment: diagnosis/problem** (B) shoulder pain et weakness I/M was pleasant et cooperative. | |
| | | **Sign:** Loren W. Crask PTA |
| | | Monica Gaither PTA |
| | | Emily Thomann DPT |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)

Printed on Recycled Paper

LONG - Medical Records - Bates #000108

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

**Lawrence Correctional** **Center**

Offender Information:

Long      Dwight      ID#: 515203
Last Name      First Name      MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/28/14<br>9:20 AM | **PHYSICAL THERAPY ASSISTANT NOTE** | |
| | **S: Affect on Patient:** appetite   activity   sleep   anger   moaning   crying   irritability   tense restlessness diaphoresis | |
| | **O: Pain Assessment:** Is patient experiencing pain: Y (N) | |
| | Primary site: | |
| | Any additional sites: | |
| | **Pain Intensity:** (using following scale): 1   2   3 4 5   6   7   8   9   10 | |
| | **Description of pain:** dull ache   throbbing | |
| | pressure heaviness   burning   shooting   sharp   localized radiates | |
| | **Frequency of pain:** occasional   always present comes and goes   other | |
| | **Aggravating factors:** movement   ambulation immobility   other | |
| | Reports that he has been doing the HEP. States that he has more difficulty ē (1) Shld.<br>**Objective/Treatment/Intervention:** | |
| | 1/m used the blue tB to do 15 reps of resisted scapular squeezes, IR, et | |

Distribution: Offender's Medical Record

DOC 0084 (Eff. 9/2002 (Replaces DC 7147)

Printed on Recycled Paper

   LONG - Medical Records - Bates #000109

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

___Lawrence Correctional___  Center

| Offender Information: | | |
|---|---|---|
| Long | Dwight | ID#: 515203 |
| Last Name | First Name | MI |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/28/14 9:20 Am | ER on (B) shlds. Cues were Given to do them correctly With 2# wts on his wrists did 20 reps of (B) shld. flexion et abduction. In prone did 15 reps of scapular strengthening exs. Was instructed to try to keep the elbow extended Received IFC at 80-150 Hz et hot pack x 10 min. to each shld. Skin check after the tx was WNL's. | P: Plan: Cont. ♂ P.T. 3x/wk to ↑ strength et Rom in (B) shlds. |
| | | Patient education and instruction:  disease proces fall prevention  exercise  safe mobility |
| | | use adaptive equipment  medication safety |
| | | Specify: Encouraged 1/m to keep up ♀ the HEP 2-3x/ day. |
| | A: Treatment: diagnosis/problem | |
| | (B) shld pain et weakness. 1/m seems to be making progress. ♂ c/o pain this date. Difficulty noted ♀ the, ER et prone exs. 1/m was pleasant et cooperative. | |
| | | Sign: M Gaither PTA |
| | | Monica Gaither PTA |
| | | Emily Thomann DPT |

13 of 15  LONG - Medical Records - Bates #000110

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER OUTPATIENT PROGRESS NOTES
### LAWRENCE CORRECTIONAL CENTER

Offender Information:

Last Name: Long   First Name: Dwight   MI:   ID#: S15203

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 7/30/14 8:55am | PT Note | |
| | S) Hm c/o ③ shoulder stiffness. ℞ shoulder is better but ⓁL is still having trouble | ℞ Skilled PT to cont 1x/wk x 3 weeks. *S Thomann, DPT* |
| | O) Pain S110 ache Ⓛ shoulder, 0/10 @ rest shoulder in relaxed posture, pain ↑ mov'y/dressing *Joh Comar* AROM ℞ flexion 0-145° abduction 0-144° 1R 0-50° 2R 0-90° extension WNL Ⓛ flexion 0-132° abduction 0-136° 1R 0-24° 2R 0-43° - goal partially met | |
| | MMT ℞ shoulder grossly 5+/5 Ⓛ 3/5 - goal met ③ lats 4+/5 low trap 4+/5 mid trap ℞ 4+/5 Ⓛ 4-/5 - goal met | |
| | Tx -Hm demo Ⓛ c̄ pene parascapular exercises, core AAROM flexion + abduction + scap squeezes. PT added to HEP AAROM core SF ℞ + supine gravity Add SF stretch ī 3# weight. | |
| | A) Hm completed new ex's difficult, able to demo full range ī ex but limited during objective testing. Cont to ensure S̄ HEP | |

ILLINOIS DEPARTMENT OF OFFENDER
**Offender Health Status Transfer Summary**

**Transferring Facility:** Lawrence Center

Offender Information: Last Name: Long  First Name: Dwight  MI: ___  ID#: S15203

Date: 9/17/16    Time: 815    ☐ a.m. ☑ p.m.

**Transfer Screening** (completed by transferring facility health care staff): ☐ HIV Test & Counseling Offered (only transfers to ATC, parole, release or discharge)

| | |
|---|---|
| Allergies: NKA | Food Handler Approved: Yes |

Current / Acute Conditions / Problems: ∅

Chronic Conditions / Problems: HTN BPH PTSD chronic low back pain A/O ___

**Current Medications** (name, dosage, frequency, and duration):

Acute Short-term: ___

Chronic Long-term: Naproxen 500 ___ ___ ___

Chronic Psychotropic: ___

Current Treatments: ∅

Therapeutic Diets: RNC

Follow-Up Care: ___

Chronic Clinics: HTN 3/3/16

Specialty Referrals: Mental Health

Significant Medical History: h R three - wrist surgery

Physical Disabilities / Limitations: ∅

Assistive Devices / Prosthetics: ___    ☑ Glasses ☐ Dentures ☐ Hearing Aid

Mental Health Issues: ☐ Hx Suicide Attempt: Date: ___ / ___ / ___    ☐ Hx Psych Med  ☐ Hx MPC / STC   Substance Abuse: ☑ Alcohol ☑ Drugs

R & C Use Only:  ☐ LAB   ☐ EKG   ☐ CXR   ☐ Dental   ☐ MEDS   ☐ MH   ☐ Other: ___    ☐ Packet Complete

Pamela Ward R    Print Name and Title    Pamela Ward R    Signature    9/17/16    Date

**Reception Screening** (completed by receiving facility health care staff):

Facility: Graham    Date: 9/21/16    Time: ___ ☐ a.m. ☑ p.m.

Subjective:
Current Complaint: None

Current Medications/Treatment: SSE Mar

Assessment: ___

Objective:
Physical Appearance/Behavior: ∅

Deformities: Acute/Chronic: Deformities none apparent

T: 97    P: 80    R: 18    B/P: 121/81
203#

Plan: Disposition:
☐ Health Information Given    ☐ Emergency Referral: ___
☐ Sick Call: Urgent / Routine
☐ Medication Evaluation  ☐ Therapeutic Diet  ☐ Special Housing  ☐ Chronic Clinics
☐ Work / Program Limitation  ☐ Specialty Referrals  ☐ Other (specify): ___
☐ Infirmary Placement:
☐ Other (specify): ___

Printed Name and Title    Signature    9/21/16    Date

**For Adult Transition Center transfers only:**

I understand that medical and dental care are my responsibility while I am housed in a transition center. I also understand that if I am in need of health care and I cannot afford pay for it, I may be transferred back into a facility within the Department that can provide my medical, mental health, or dental needs.

Offenders Signature    Date    Time    ☐ a.m. ☐ p.m.

Distribution: Offender's Medical Record; Transferring Facility; Receiving Facility

DOC 0090 (Rev.11/2012)

15 of 15

②

IN THE

## United States District Court
## Central District of Illinois, Urbana, Illinois

Dwight Long
_____
Plaintiff/Petitioner )
)
)
Vs. )  No. _19-cv-3195_
)
Terry Martin, et al )
_____
Defendant/Respondent )

### PROOF/CERTIFICATE OF SERVICE

TO: Office of The Clerk
U.S. District Court
Central District of Illinois
Urbana, Il. 61802-3348

TO: Hon. Judge Colin S. Bruce
U.S. District Court
Central District of Illinois
Urbana, Il. 61802-3348

PLEASE TAKE NOTICE that at: **8:30** AM/PM __June__, 20 **21**, I
placed the documents listed below in the institutional mail at __Coraltam__
Correctional Center, properly addressed to the parties listed above for mailing through the
United States Postal Service.

_____

Plaintiff's Answers to Defendant Kayira's Defenses Pt. 1+2

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of perjury
that I am a named party in the above action, that I have read the above documents, and that
the information contained therein is true and correct to the best of my knowledge and belief.

Chi Cal.  6/25/21

    OFFICIAL SEAL
  CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

/s/ _____
Name: Dwight Long
IDOC No. K-15203
Coraltam Correctional Ctr.
12078 Illinois Rt. 185
Hillsboro, IL 62049

②

①

STATE OF ILLINOIS    )
                     )  ss
COUNTY OF _Montgomery_ )

### AFFIDAVIT

I, _Dwight Long_, do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts.

Plaintiff's Answers to Defendant Kayira's Affirmative Defenses (dated January 12, 2021) (Part 1)

(1) Defendant Kayira was employed by Wexford as Medical director at Graham during the time relevent to this Complaint.

(2) Jurisdiction and venue are proper in the Central District of Illinois.

(3) Defendant Kayira is at all times relevent to this Complaint as a licensed doctor to practice in the state of Illinois. He (Kayira) admits in Answer #1, that he has been employed at the time of this Complaint as Medical director. Defendant Kayira was very well aware of Plaintiff's urinary problem and assault that took place when Plaintiff's Shoulder and back were injured. Defendant Kayira was very well aware of Plaintiff's serious medical needs.

(4) What also is known, that Plaintiff had a serious

Pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

_Ch. Cal._ 6/25/21

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

1 of 7

Signed on this 25TH day of _June_, 2021.

_____
Affiant

①

medical need with my shoulder, confirmed by Dr. Youssef El Bitar of SIU SLR Orthopedic office in Carlinville, Il. And Plaintiff's urinary problems by Dr. Dharma L. Nayak, Urologist, of Effingham, Il. On two separate occassions with visits to Dr. El Bitar, November 2018 and June 2020, Dr El Bitar confirmed Plaintiff needed shoulder replacement surgery. On (5) separate occassions, and visits with Dr. Nayak, Hall and Defendant Kayira didn't follow orders given by Dr Nayak, so Plaintiff continued to suffer. Now, either Defendant Kayira didn't read and follow the orders of these Doctors recommendations, or had no idea the problem Plaintiff was enduring. This obviously constitutes deliberate indifference to a serious medical need and Eighth Amendment Violation which prohibits the infliction of "cruel and unusual punishments" on convicted prisoners.

(5) Now to respond to this defense, All anyone needs to do is read the reports of Dr's El Bitar, Dr. Nayak, Dr. Myers, Dr. Panter, and Dr. Sullivan.

(6) Defendant Kayira delayed and was deliberately indifference to serious medical need by Plaintiff. Defendant Kayira also was not qualified to render any "Specialist Care" on his own, that Plaintiff required.

(7) Plaintiff should be entitled to relief for pain and suffering. Also not recieving adequate and timely treatment for urinating blood constantly, injured

2 of 7

RIGHT shoulder, And back. At the behest of HCU, De-
fendants KAYIRA, HOWARD, BARBER, And MALTER Along
With others NOT NAMED, Plaintiff has endured medi-
cal Neglect and deliberate indifference Along With
Eighth Amendment violations from people NOT QUA-
lified To service The community outside prison WALLS.

(8) Plaintiff's claims are meritorious in truth and fact.
Medical records from the qualified and factual doc-
tors (Dr. NAYAK, Dr. El Bittar, Dr. Sullivan, Dr. Myers,
And Dr. Painter) show the seriousness of the injury
And illness Plaintiff sustained.

(9) Included in This Affidavit, is AN Article of why Prison
HealthCare is under Fire in Illinois. To be more
specific this type of of so-called health service to
prisoners is absolutely outrageous. Also medical docu-
ment showing Plaintiff explained to Dr's what happened to
my shoulder.

6/25/21  Respectfully submitted,

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/18/23

Dwight Long # S-15203

3 of 7

# Prison Health Care Provider under Fire in Illinois

*by Christopher Zoukis*

In 2011, THE STATE OF ILLINOIS SIGNED a 10-year, $1.36 billion contract with Wexford Health Sources, a for-profit company, to provide medical services to Illinois prisoners. Since the contract went into effect there have been numerous complaints concerning the level of medical care that prisoners are receiving – or rather not receiving. In fact, more than 170 federal lawsuits have been filed against Wexford by Illinois prisoners since the company's contract was announced in September 2011.

The relationship between the Illinois Department of Corrections (IDOC) and Wexford has been in the spotlight before. Six years ago, former IDOC director Donald Snyder pleaded guilty to accepting $50,000 in bribes from lobbyists, including a lobbyist for Wexford. He was sentenced to 24 months in federal prison; Wexford was not implicated in the bribery scandal. [See: *PLN*, March 2009, p.50; Dec. 2007, p.40].

Last year the John Howard Association, a prison watchdog group, released a report which found that Wexford had never been audited prior to the $1.36 billion contract award, and that no one is currently reviewing the quality of care the company provides to Illinois prisoners.

The report recommended a number of remedial actions, including increasing external oversight of prison healthcare services; improving medical records and data collection and sharing; increasing availability of substance abuse treatment within IDOC facilities (and as an alternative to incarceration); abolishing or modifying the co-pay system for prison medical care; increasing bi-lingual staff and improving access to services, particularly healthcare services, for Spanish-speaking prisoners; instituting opt-out HIV and hepatitis C testing at IDOC reception and classification centers; and providing HIV and hepatitis C treatment to more prisoners.

Additionally, the report suggested that IDOC officials "reassess and increase staffing levels of physicians, nurses, psychiatrists, mental health professionals, dental staff, optometrists and security and clerical staff as needed to ensure that inmates receive timely access to quality healthcare."

State Rep. Greg Harris has sought proof that Wexford is fulfilling its contract with the IDOC, but has not been satisfied with the results of his inquiry. "I got a one-page response from the Department of Corrections saying that they're doing it.... We need to dig beyond what people tell us that there's no real problem here, keep moving, there's nothing to see," he stated. "We as legislators need to do our jobs and monitor these contracts."

The complaints against Wexford have included severe cases of medical neglect. Chris Clingingsmith, an Illinois state prisoner who was housed at the East Moline Correctional Center, alleged in a federal lawsuit that he was assaulted by a fellow prisoner and kicked in the face. Afterwards, he approached prison guards and told them he had fallen and broken his jaw on a counter. Due to lying about the assault, he was placed in segregation and not taken directly to medical. "I was nauseous, I had migraine headaches, my jaw hurt, I couldn't sleep, I had blood in my urine. I was just a mess," said Clingingsmith.

While in segregation he requested to see a doctor for his injuries. The first time he was examined by Dr. William E. Rankin, a prison physician, it was only for a few minutes. He was prescribed aspirin. Clingingsmith went back a second time and informed Dr. Rankin that he thought he had a broken jaw. Dr. Rankin allegedly quipped in response, "Where did you get your medical degree?"

Several weeks later, Clingingsmith was transferred to a higher security state facility. He was examined by a dental assistant, who took X-rays. According to Clingingsmith, upon reviewing the X-rays she stated, "Oh my gosh. You have a broken jaw." He replied, "I know." After the injury was confirmed, Clingingsmith endured drastic surgical treatments. His face was cut open, a hammer was used to re-break his jaw and titanium plates, six screws and a tension band were utilized. It took eight weeks after the initial injury to obtain adequate medical care. During that time, according to Clingingsmith, he lost 60 pounds due to not being able to eat. "If he can't even diagnose a broken jaw ... I don't think that he should be doing that job. That's not the right gig for him," he said of Dr. Rankin.

Clingingsmith has since been released.

His lawsuit remains pending; on March 13, 2013, the district court denied the defendants' motions for summary judgment. The case is set for trial in January 2014. See: *Clingingsmith v. Rankin*, U.S.D.C. (N.D. Ill.), Case No. 4:11-cv-04037-SLD-JAG.

Another Illinois state prisoner, Jeff Elders, who has a hard growth on his hand that is causing his fingers to curl up, said, "They tell you flat out, they can't do nothing for you. Unless it's an immediate issue, they're not doing nothing for you. [The doctor] said, well, I'll give you some aspirins and I suggest you take care of it as soon as you can when you get out or you're going to end up like this, all crippled up, but there's nothing we're going to do for you here."

Situations like this aren't surprising to Alan S. Mills, legal director of the Uptown People's Law Center on Chicago's North Side. "It's absolutely representative of the level of care. That sort of delaying of treatment until things get worse is typical," he said. "[T]hat unfortunately is what we see all the time in the Department of Corrections: putting off care that would be very simple at the beginning and putting it off and putting it off and putting it off until it becomes a serious problem which nobody can ignore any more."

Mills has several clients who alleged similar mistreatment by Wexford employees. Consequently, in October 2011 the Uptown People's Law Center, in conjunction with the law firm of Seyfarth Shaw LLP, filed a federal class-action lawsuit over the lack of meaningful medical care in Illinois state prisons.

According to a Seyfarth Shaw press release, the suit was filed "on behalf of plaintiff Donald Lippert, a diabetic prisoner incarcerated in the Statesville Correctional Center, and all inmates with serious medical conditions who are continually denied treatment."

The complaint describes examples of medical neglect and deliberate indifference to prisoners' medical needs, and alleges that "lack of treatment goes beyond the indifference of specific medical personnel and is the consequence of overarching policies and procedures put in place and executed by the IDOC and Wexford Health, which manages health care services for the prison system."

The case remains pending; on Janu-

4of7  36

ar y 10, 2013, the district court denied the defendants' motion to dismiss the plaintiffs' third amended complaint. See: *Lippert v. Ghosh*, U.S.D.C. (N.D. Ill.), Case No. 1:10-cv-04603.

Rep. Harris has not taken the issue of prison medical care lightly, either. He introduced House Resolution 1248, which would require an examination of the IDOC's contract with Wexford and the quality of medical care being provided to Illinois state prisoners. The resolution calls for either the Illinois Auditor General or the National Commission on Correctional Health Care to monitor Wexford's provision of medical treatment in IDOC facilities. While company officials said they were open to third-party oversight, others remain skeptical.

The real question that people are trying to answer is how best to enforce the state's prison medical care contract. Wexford said through a spokesman, "We assure you that Wexford Health holds our employees accountable just as any other company would." Given that most companies are motivated by profit rather than accountability, however, that statement is less than reassuring. As Mills noted, "You have to enforce a contract

or it doesn't mean anything. There's nobody holding them [Wexford] accountable other than the courts."

John Maki, director of the John Howard Association, agreed. "Right now we're relying on court cases to provide oversight, which should be taking place at the institutional level. If we get to the point of litigation, the problem's already happened, right? Someone's already suffered grievous injury. We want to prevent injury."

Unfortunately, it looks like litigation is the only thing that state officials and for-profit companies like Wexford understand. For example, in 2009, Wexford paid $300,000 to settle a lawsuit over the wrongful death of an Illinois prisoner who

died after suffering an asthma attack. [See: *PLN*, Dec. 2010, p.27].

But there are limits to what lawsuits can accomplish. "Here's what court cases can't do. They can't create a more effective system," Maki noted. "They can chip away at it, they can restore someone who's been hurt but they're not good at building better systems of oversight. We need government to do that." ◼

Sources: *www.wbez.org; www.wexford-health.com; www.seyfarth.com;* "*Unasked Questions, Unintended Consequences: Fifteen Findings and Recommendations on Illinois' Prison Healthcare System*," *John Howard Association of Illinois (Oct. 2, 2012)*

## inmateMAGS.com
formerly MyMagstore.com

Buy 1200 **SINGLE** Copies of Magazines • 1200 **Subscriptions** • **VIP** Service
1800 **Newspapers** • Payment with **Stamps** • **Prepaid Accounts**
Send $3 or 10 Stamps for **50+ Page Full Catalog** ($3 Discount Coupon Included)

| InmateMAGS.com | Mymagstore.com | www.inmateMAGS.com |
| 4208 University Way NE | Info@mymagstore.com | Info@inmatemags.com |
| Seattle, WA 98105 | 877-324-7323 | 206-322-6397 |



### Kill Shot King.com

- All shots are only No Tax **50¢** each or less No Shipping
- All shots are **100% WATER PROOF**
- Get your family or friends visit our website and print **ALL** catalogs for **FREE**
- Request KSK Gift Cards from your family and friends
- We sell Brick of Flicks! **200** shots for ONLY **$75.00**
- Request KSK gift cards from your friend or family

*Kill Shot King.com*

**Kill Shot King.com**
What's up convicts!? We are the best in the biz!!! Created by inmates for inmates. Our next $300.00 Art Contest begins on June 1st. Send your art/entry today. If you have ANY questions or suggestions shoot us a kite along with a SASE. Thanks for all the Biz!

- **ACTION** shots galore!
- **594** shots in each catalog
- **FREE** catalog when you mention the code word: PEGASUS
- Mention code word: BATMAN and get 15 **FREE** shots with your first order of 30 or more
- All shots ordered from our website get a KING sized discount
- Request special shots or models

Kill Shot King
P.O. Box 81074
Corpus Christi, TX 78468

- Need help with Email or Facebook access?
- Want to send someone a special gift?
- Interested in a PenPal address catalog or in getting placed in a PenPal catalog of American Prisoners that we distribute all across the world?
- Send SASE with 2 First Class Stamps for FREE catalog

## American   Convict   Connection .com

- Are you looking for assistance getting your songs or books purchased or published?
- Searching for a long lost friend or family member?
- Looking for the latest Urban Novels?

We can help with much more, including help with PAROLE preparation and presentation. We will do all we can to help you reconnect to the world. Our specialty is helping inmates communicate with their friends and family because we know the stress of mail call!

American Convict Connection
P.O. Box 81002
Corpus Christi, TX 78468

Patient:        Dwight D. Long
Encounter:      Sep  5 2018  2:30PM                         *MRN:*    579018

ST. FRANCIS HOSPITAL
1215 FRANCISCAN DRIVE
LITCHFIELD, ILLINOIS
(217) 324-2191

Patient Name: LONG,DWIGHT Date of Birth: 10/18/1951
Med Rec #: ME00271054 Age/Sex: 66/M
Account #: E00000467898 Pt. Location: ORTHO
Attending Provider: PAINTER,CARL (TRACY) F MD
Ordering Provider: PAINTER,CARL (TRACY) F MD

Study Date Order Number Procedure
09/05/18 0905-0015 XR Shoulder 2 or more Views Rt

\*\*\* Signed \*\*\*

Date: 9/5/2018 12:00 AM

Exam: XR Shoulder 2 or more Views Rt

Comparison: MRI of the right shoulder dated 6/15/2019.

Technique: 3 views of the right shoulder.
                              April
History: Right shoulder pain since ~~March~~ 2017 after altercation. Decreased range of motion.

Findings: There is no fracture nor dislocation. There is mild to moderate glenohumeral joint
arthritis. There is AC joint arthritis. The right clavicle and AC joint appear intact. The scapula
appears intact. There is no soft tissue abnormality. The visualized right upper lung is clear.

Impression: Mild to moderate arthritis of an intact right shoulder.

Electronically Signed By: STANTON,DANIEL L MD 09/05/18 1506

Dictated On: 09/05/18 1505
Interpreted By: STANTON,DANIEL L MD
Transcribed On: 09/05/18 1505 - INFCE

XRAYS today reveals type II acromion, moderate glenohumeral osteoarthritis
**Findings:**
MRI was reviewed and reveals partial cuff tear, large labral injury; proximal biceps ruptured

**Procedure**

**Procedure:** Injection of the right glenohumeral joint.
**Indication:** osteoarthritis.
Were discussed with the patient. Verbal consent was obtained prior to the procedure.

~~Surface~~



6 0 4 7

LONG - Medical Records - Bates #000898

# St Francis Orthopedic Center
## 725 St. Francis Drive,
## Litchfield, IL, 62056
*Ph: (217) 324-8798 Fax: (217) 324-8622*

MRN:  579018
Encounter Date:  Sep  5 2018  2:30PM

Dwight Long
12078 IL Rt 185
Hillsboro, IL 62049
DOB: 10/18/1951   (66yrs)
Gender: M
(H) (999) 999-9999

## Chief Complaint
**Chief Complaint:**
The patient presents to the office today with RIGHT shoulder pain.

## History of Present Illness
*4-19-2011*
HPI: Patient comes to clinic today with complaints of RIGHT shoulder pain. He reports that on 9-20-2017 was involved in an altercation and injured his RIGHT shoulder. He is RIGHT handed. He has night pain that keeps him awake. He is currently incarcerated. He reports decreased range of motion due to pain. He states his pain radiates down to his thumb. He uses Tramadol with no relief.

## Review of Systems
See HPI for pertinent positives.

## Active Problems
1. Shoulder pain, right (719.41) (M25.511)

## Physical Exam
**Constitutional:** alert and in no acute distress.
**Neurological:.** the patient was oriented to person, place, and time. . mood and affect were appropriate..
**Eyes:** pupils were equal in size, round, reactive to light, with normal accommodation.
**ENT:** hearing was normal.
**Pulmonary:** no respiratory distress.
**Right Shoulder:** EXAM reveals positive Hawkins, pain with resisted abduction, IR to posterior beltline, 90 abduction, 80 ER, AC tenderness, positive Speeds, positive popeye

## Results/Data
**XR Shoulder 2+ View Rt**          05Sep2018 03:05PM          Painter, Carl F

| Test Name | Result | Flag | Reference |
|---|---|---|---|
| XR Shoulder 2+ View Rt | (Report) | | |

M.D.REVIEW

DATE_____

PH___ S

PULL CH          [ ]

SEE PATIENT     [ ]

FILE             ☐

*70&7*

STATE OF ILLINOIS )
)  ss
COUNTY OF _Montgomery_ )

<u>AFFIDAVIT</u>

I, _Dwight Long_____, do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts.

Plaintiff's Answers to Defendant Kayira's Affirmative Defenses (Dated January 12, 2021) (Part 2)

(1) Defendant should not be protected by the "Doctrine of Qualified Immunity". Defendant Kayira clearly violated Plaintiff's established statutory or constitutional rights of which a reasonable person would have known. Being the "Qualified" Medical Director at Graham, he clearly was "Deliberately Indifferent" to Plaintiff's medical needs.

(2) Employees of private prisons, and other private parties who act "under color of State law", are not protected by "Qualified Immunity".

(3) As stated by Plaintiff in his complaint and affidavits, Exhaustion of Administrative Remedies were exhausted.

(4) Plaintiff's claims for relief accrued two years after initiation of this case (August 1, 2019).

Pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

_C. Cl_  6/25/21

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

1 of 2

Signed on this 25TH day of _June_, 20_21_.

_____
Affiant

(5) Defendant Kayira's duties as Medical Director of Graham, at all times is relevant to this lawsuit as a licensed doctor to practice in the state of Illinois, for the medical care of all prisoners at this institution. IDOC's and Defendant Kayira's under took the contract with Wexford to ensure that inmates recieve timely access to "Quality healthcare". It doesn't say Defendant Kayira's duties were "limited".

Respectfully submitted,

Dwight Lone #f-15203

Chris Cl. 6/25/21

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

STATE OF ILLINOIS )
                           ) ss
COUNTY OF MONTGOMERY )

### AFFIDAVIT

I, DWIGHT LONG , do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts.

ISSUE CONCERNING Lidocaine Gel APPLICATION:

(1) Plaintiff EXPLAINED to HCU THAT IT WAS impossible for ANYTHING TO ENTER MY PENIS. Plaintiff's PENIS WAS Swollen SHUT.

(2) Defendant's OWN MEDICAL documents SHOW THAT THERE WAS NO WAY Foley CATHETER would ENTER Plaintiff's PENIS because of blockage.

(3) Nurses MARY LANEE And Lindsay Springer on 4-16-17, were unable to place Foley inside Plaintiff's URETHA. Also Defendant MARTIN TRIED TO INSERT Lidocaine Gel IN Plaintiff's PENIS. It only RAN back OUT.

(4) Enclosed Medical documents will show Plaintiff's CONCERNS WITH Lidocaine Gel ISSUE. Plaintiff WAS having TROUBLE RELEASING his URINE. THIS IS THE REASON for MY bladder And swollen Abdomen could NOT RELEASE because NOTHING could GO IN OR COME OUT.

Pursuant to 28 USC 1746, 18 USC 1621, or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Ch. Cal. 6/25/21

Signed on this 25TH day of June , 20 21.

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

1 of 6

_____
Affiant

(5) THIS is why all THE confusion during THIS period. No one in HCU was concerned about PLAINTIFF. THEIR only concern was to blame PLAINTIFF for his problems and HCU had a problem with my SISTER calling about PLAINTIFF's medical issues.

(6) On April 9TH & 10TH 2017, PLAINTIFF's SISTER (Mrs Sonja Cole) spoke with WARDEN Coke, DON HOWARD, and CMT/Defendant TERRY MARTIN about PLAINTIFF continuing to URINATE blood and severe pain.

Respectfully submitted,

Dwight Lone #J-15203

6/25/21

OFFICIAL SEAL
CHRISTOPHER CALDERINI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/18/23

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

**GRAHAM Correctional** ____ Center

| Offender Information: | | | |
|---|---|---|---|
| Long | Dwight | | ID#: S15203 |
| Last Name | First Name | MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4/16/17 p | RN CN II Note: S/o asks | P- Cont POC |
| | for a foley cath when | |
| | questioned re: diff | |
| | urinating. MD called, | |
| | orders rec'd. Has voided | |
| | 200mL amber urine. | HERE IS ANOTHER |
| ✱ | Attempt x 2 RN's to | STATEMENT by HEALTH- |
| | insert #18fr then #14fr. | CARE WORKERS NOT believing |
| | foley using steril tech. | WHAT THIS INMATE SAYS. |
| | Unable to insert both | |
| | foley's R/T resistance | |
| | to inside of Urethra. | |
| | Tol well c min discomfort | |
| | Will make MD aware. | |
| | Aware of need to record | |
| | I-O | K. Gladney CNII |

ILLINOIS DEPARTMENT OF CORRECTIONS

**Offender Outpatient Progress Notes**

GRAHAM Correctional ___ Center

Offender Information:

Last Name: _Long_   First Name: _Dwight_   MI: ___   ID#: _S15203_

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 4-16-17 7p | RN note<br>S: Pt resting quietly in bed c̄ urinal at bedside c̄ 200 ml amber urine. Pt intake @ this time is 350 cc. Lungs CTA. Abdomen slightly distended. Pt denies pain c̄ palpation. No acute distress noted.<br>A: Altered pain | P: Cont POC<br><br><br><br><br><br><br><br>M. Luce RN |
| 4-17-17 12AM | Early II note S: ℅ difficulty urinating "when I attempt to urinate it only drips out."<br>O: 150/91 -80-18-99² 4 standing @ toilet when writer entered rm B. A+O x3 resp ⁴/m (cont) → | P: Cont to mx.<br><br><br><br><br>See note II |

ILLINOIS DEPARTMENT OF CORRECTIONS
## Medical Special Services Referral and Report

### GRAHAM CORRECTIONAL CENTER
(Facility)

Offender's Name: _Long Dwight_   ID# _515203_

Reason for Referral:   ☐ Consult   ☐ Non-Formulary Medications   ☐ Medical Equipment
☐ Evaluation   ☐ Management
☐ Procedure/service (specify) _____ _Urology_
☐ Other (specify) _____

Urgent: ☒ Yes   ☐ No

Referred to: _Dr Hayka Nayak_

Rationale for Referral: _Pt with bladder mass. had_
_surgery to remove. Pt having trouble go to_
_bathroom. Try to place foley, couldn't because of_
_blockage._

Dr. Francis Kayira                                            4-17-17
Print Referring Practitioner's Name      Referring Practitioner's Signature      Date

Report of Referral (Use Reverse Side, if necessary)

Findings: _Poss - Urethral Fistula_

Assessment: _Leely SP Ureth di___

commendations/Plans: _? TURP (unlikely) under_
_ASAP Anest_
_Please call us to schedule_

Dr Francis Kayira                                            Date 4/17/1
Print Practitioner's Name      Practition___

Facility Medical Director Use Only
I have reviewed the recommendations and:

☒ Approve.

☐ Deny or revise as indicated on the Notification of Medical Service Referral Denial or Revision,
DOC 0255.

Dr. Francis Kayira                                            4-17-17
Print Facility Medical Director's Name      Facility Medical Director's Signature      Date

Distribution:  Offender's Medical File, and                    DOC 0254 (Eff.4/2007)
If denied/revised, Heath Care Unit Administrator                (Replaces DC 7105)

5 of 6

LONG - Medical Records - Bates #001876

WEXFORD HEALTH SOURCES INCORPORATED

To:        Site Medical Director & HSA        **DELIVERED** APR 1 8 2017

From:      Utilization Management

Date/Time: 04/18/201707:22:48

Subject:    Inmate Name:   LONG, DWIGHT D
            Inmate Number:  S15203
                   Site:  GRAHAMCI
                Service:
                        99213   OFFICE/OUTPATIENT VISIT EST

Authorization ID: 373484098

Based upon a review of the information provided, Service is Approved.



Comments:
4/17/17 Received urgent request for Urology F/U r/t patient s/p
bladder neck resection 1/11/17, having difficulty urinating, unable
to place foley. Approved by Dr. Garcia after review of the
referral. Meets IQ.

From: _____
      Dedicated Utilization Management
------------------------------------------------------------------------

INFORMATION CONTAINED IN THIS DOCUMENT IS PRIVILEGED AND CONFIDENTIAL

Foster Plaza4 - 501 Holiday Drive - Pittsburgh, PA 15220
277-939-2884 or 800-353-8384 - Phone
                        412-937-9151 - Fax
WWW.WEXFORDHEALTH.COM

6 of 6